UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PAUL HENDRIETH<br>    PLAINTIFF,<br><br>v.<br><br>SAIPIDIN TUTASHOV,<br>MIRLANBEK MURZAPAZYLOV,<br>SYRAZHIDIN ZHALALDIN UULU<br>d/b/a SYRAZHIDIN ZHALALDIN,<br>TUTASH EXPRESS, INC.,<br>KG LINE INCORPORATED,<br>SAM EXPRESS, INC.,<br>    DEFENDANTS. | Case No.:<br><br>JURY TRIAL DEMANDED |

## **COMPLAINT**

Plaintiff Paul Hendrieth, by and through counsel Kreitman Law, LLC, brings this action against Defendants for violations of the Truth in Leasing Act, 49 U.S.C. § 14704(a)(2) ("TILA"). This matter remains under investigation and Plaintiff anticipates moving for leave imminently to provide the Court additional factual allegations, defendants and claims as a result of said investigation.

**I. NATURE OF ACTION**

1. This is a civil action arising under the Truth in Leasing Regulations, 49 C.F.R. § 376.1 et seq., promulgated pursuant to the Interstate Commerce Act, 49 U.S.C. § 14704(a)(2), seeking damages and equitable relief for Defendants' systematic violations of federally mandated leasing requirements in connection with their fraudulent chameleon carrier operation.

**II. JURISDICTION AND VENUE**

2. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) and 49 U.S.C. § 14704(a)(2), which provides a private right of action for violations of the Truth in Leasing Regulations codified at 49 C.F.R. § 376.1 et seq.

1

3. This Court has supplemental jurisdiction over related state law claims pursuant to 28 U.S.C. § 1367.

4. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2) because all individual Defendants reside in this district, corporate Defendants maintain their principal places of business in this district, and a substantial part of the events giving rise to the claims occurred in this district.

5. This Court has personal jurisdiction over all Defendants because they reside in, are located in, and/or conducted substantial business activities within this judicial district, and the claims arise from those activities.

## III. THE KGZ OUTFIT: A UNIFIED FRAUDULENT ENTERPRISE

6. This case involves a sophisticated criminal enterprise operating under the guise of legitimate motor carrier businesses, hereinafter referred to as the "KGZ OUTFIT."

7. Since at least 2021, the KGZ OUTFIT has operated a fraudulent chameleon carrier scheme designed to evade federal safety regulations, avoid legal liability, circumvent customer blacklists, and systematically exploit commercial drivers through predatory leasing arrangements in violation of federal law.

8. The KGZ OUTFIT operates through a network of shell corporations that share common ownership, common management, common operational control, intermingled finances, and a unified fraudulent business purpose.

9. The corporate entities comprising the KGZ OUTFIT do not observe corporate formalities and are not operated independently of one another or independently of the individuals who control them.

10. At its core, the KGZ OUTFIT consists of co-principals SAIPIDIN TUTASHOV and MIRLANBEK MURZAPAZYLOV, who exercise operational control over multiple motor carrier

2

entities including TUTASH EXPRESS, INC., KG LINE INCORPORATED, and SAM EXPRESS, INC.

11. The KGZ OUTFIT could not function without the assistance of SYRAZHIDIN ZHALALDIN UULU, who serves as a nominal corporate officer and registered agent to conceal the true ownership and control structure and to evade legal liability and regulatory disclosure requirements.

12. The KGZ OUTFIT also relies on consultant TIMUR TILENOV, who through his entity AITIM, INC., arranges for essential services to facilitate the fraud, including:

   a. a. HERO ELD electronic logging device services with illegal backdoor capabilities to falsify Hours of Service (HOS) and Records of Duty Status (RODS); and

   b. b. Coordination of voidable insurance policies through Reliance Partners and other providers to pass roadside inspections while avoiding legitimate insurance costs.

13. The KGZ OUTFIT operates what is known as a "chameleon carrier" scheme—cycling drivers and equipment through multiple corporate entities with separate USDOT numbers to:

   a. Circumvent customer and broker blacklists when one entity develops a poor reputation;

   b. Evade regulatory enforcement by shutting down entities facing FMCSA scrutiny and continuing operations under different names;

   c. Conceal the true scope of operations from drivers, customers, insurers, and regulators; and

   d. Undercut legitimate motor carriers by avoiding costs associated with regulatory compliance, proper insurance, and lawful driver compensation.

14. Between SAM EXPRESS, TUTASH, and KG LINE alone, hundreds of drivers have been subjected to the KGZ OUTFIT's fraudulent operations.

15. The KGZ OUTFIT has invested its ill-gotten profits in expanding real estate holdings, expanding trucking operations through additional shell entities, media outreach to Kyrgyz and Central Asian communities, and buying support and influence to provide cover for its illegal operations.

16. The KGZ OUTFIT's activities mirror those of organized criminal enterprises, using ethnic community ties, legitimate business investments, and public relations efforts to conceal and perpetuate systematic fraud and exploitation.

17. At all relevant times, the individual members of the KGZ OUTFIT exercised such substantial control over the corporate entities that those entities had no separate mind, will, or existence of their own.

18. The corporate form has been used by the KGZ OUTFIT to perpetrate fraud and injustice upon Plaintiff and similarly situated drivers, and maintaining the corporate veil would sanction fraud and promote injustice.

IV. PARTIES

    A. Plaintiff

19. Plaintiff PAUL HENDRIETH is a resident of the State of Florida and at all times relevant to this Complaint was the holder of a valid Commercial Driver's License (CDL).

20. Plaintiff is a veteran and an African American commercial motor vehicle operator who was recruited by Defendants to operate commercial motor vehicles under Defendant Tutash Express, Inc.'s USDOT/FMCSA Motor Carrier Authority.

    B. Defendants

21. Defendant SAIPIDIN TUTASHOV ("TUTASHOV") is an individual who, upon information and belief, resides in this judicial district.

22. TUTASHOV is a co-principal of the KGZ OUTFIT and exercises ownership and operational control over the corporate Defendants.

23. At all relevant times, TUTASHOV acted as an owner, manager, and controlling person of TUTASH EXPRESS, INC., KG LINE INCORPORATED, and SAM EXPRESS, INC.

24. Defendant MIRLANBEK MURZAPAZYLOV ("MURZAPAZYLOV") is an individual who, upon information and belief, resides in this judicial district.

25. MURZAPAZYLOV is a co-principal of the KGZ OUTFIT and exercises ownership and operational control over the corporate Defendants.

26. At all relevant times, MURZAPAZYLOV acted as an owner, manager, and controlling person of TUTASH EXPRESS, INC., KG LINE INCORPORATED, and SAM EXPRESS, INC.

27. Defendant SYRAZHIDIN ZHALALDIN UULU d/b/a SYRAZHIDIN ZHALALDIN ("ZHALALDIN") is an individual who, upon information and belief, resides in this judicial district.

28. ZHALALDIN serves as a member of the KGZ OUTFIT by acting as a nominal corporate officer and registered agent for the corporate Defendants for the purpose of concealing the true ownership and control of TUTASHOV and MURZAPAZYLOV and evading legal liability and regulatory disclosure requirements with the Federal Motor Carrier Safety Administration (FMCSA) and the Illinois Secretary of State.

29. The KGZ OUTFIT could not operate its fraudulent scheme without ZHALALDIN's knowing participation in concealing the true ownership and control structure.

30. Defendant TUTASH EXPRESS, INC. ("TUTASH") is an Illinois corporation with its principal place of business located in this judicial district.

31. TUTASH holds or held USDOT Number 3587407 and MC Number 1235023.

32. TUTASH is owned and controlled by TUTASHOV and MURZAPAZYLOV and is one of the primary operating entities of the KGZ OUTFIT.

33. Defendant KG LINE INCORPORATED ("KG LINE") is an Illinois corporation with its principal place of business located in this judicial district.

34. KG LINE holds or held USDOT Number 3812756 and MC Number 1411426.

35. KG LINE is owned and controlled by TUTASHOV and MURZAPAZYLOV and is one of the primary operating entities of the KGZ OUTFIT.

36. Defendant SAM EXPRESS, INC. ("SAM EXPRESS") is an Illinois corporation with its principal place of business located in this judicial district.

37. SAM EXPRESS holds or held USDOT Number 3960244 and MC Number 1500859.

38. SAM EXPRESS is owned and controlled by TUTASHOV and MURZAPAZYLOV and is one of the primary operating entities of the KGZ OUTFIT.

39. At all relevant times, TUTASH, KG LINE, and SAM EXPRESS functioned as alter egos of one another and of their individual owners and controllers, sharing:

   a. Common ownership and management by TUTASHOV and MURZAPAZYLOV;

   b. Common use of ZHALALDIN as a nominal officer and registered agent;

   c. Intermingled finances and operations;

   d. Common use of drivers, equipment, and dispatch services;

   e. Common use of fraudulent ELD services through HERO ELD/AITIM;

   f. Common use of voidable insurance policies;

   g. Common use of mandatory vendor services including repair facilities;

   h. A unified fraudulent business purpose; and

   i. No meaningful separation or independent decision-making.

40. The corporate entities were created and maintained by TUTASHOV, MURZAPAZYLOV, and ZHALALDIN for the express purpose of perpetrating fraud, evading legal liability, and unjustly enriching themselves at the expense of exploited drivers.

6

## V. FACTUAL ALLEGATIONS

### A. Plaintiff's Recruitment and Initial Representations

41. In or around September 2023, Plaintiff was recruited by the KGZ OUTFIT to operate commercial motor vehicle equipment.

42. Plaintiff was told he would be paid 88% of any freight load he transported and would pay 12% to TUTASH for freight dispatch services provided under TUTASH's USDOT MC authority.

43. The KGZ OUTFIT made the following false representations to Plaintiff with the intent to induce his reasonable reliance:

   a. a. False representation that the KGZ OUTFIT would provide legitimate dispatch services in compliance with federal regulations;

   b. Fraudulent omission of the existence of the HERO ELD backdoor scheme to falsify hours of service records;

   c. Fraudulent omission of the chameleon carrier scheme that would void Plaintiff's insurance coverage;

   d. Fraudulent omission of Defendants' prior intent to violate the terms of any lease agreement;

   e. Fraudulent omission of material lease terms in violation of the Truth in Leasing Regulations;

   f. False representation that Plaintiff would be paid 88% of freight revenues in accordance with agreed terms;

   g. False representation that Defendants would procure and maintain valid insurance policies providing actual coverage;

   h. False representation that Defendants would provide legitimate ELD services in compliance with federal regulations;

   i. False representations regarding fuel expenditures and other deductions; and

   j. False representations regarding the legitimacy of the KGZ OUTFIT's operations generally.

7

44. These misrepresentations and omissions were made knowingly, intentionally, and with the purpose of inducing Plaintiff to provide his labor and equipment to the KGZ OUTFIT while concealing the fraudulent nature of the operation.

45. Plaintiff reasonably relied upon these representations in deciding to enter into a business relationship with the KGZ OUTFIT.

46. Plaintiff began working for the KGZ OUTFIT on or about September 21, 2023.

**B.  The Lease Arrangement**

47. Under the purported lease arrangement, TUTASH would "lease" CMV equipment (a trailer) to Plaintiff, and then Plaintiff would "lease-back" the trailer to TUTASH to be operated under TUTASH's USDOT MC authority.

48. Similarly, Plaintiff would lease his CMV truck to TUTASH to be operated under TUTASH's USDOT MC authority.

49. This arrangement made Plaintiff an "owner-operator" and TUTASH an "authorized carrier" as those terms are defined in the Truth in Leasing Regulations, 49 C.F.R. § 376.2.

50. As the authorized carrier in a lease-back arrangement, Defendants were subject to all requirements of the Truth in Leasing Regulations, 49 C.F.R. § 376.1 et seq.

**C.  Systematic Violations of Truth in Leasing Regulations**

51. Plaintiff provided with a written copy of the lease agreement upon request to keep in his equipment as required by 49 C.F.R. § 376.12(a) and was never provided one for any Defendant aside from TUTASH.

52. The lease arrangement was concluded online and over the phone, with material terms omitted or misrepresented.

8

53. Plaintiff not provided with rate confirmations showing the actual amount TUTASH or any other KGZ OUTFIT entity received for the freight loads Plaintiff transported, as required by 49 C.F.R. § 376.12(h).

54. Without rate confirmations, Plaintiff was unable to verify that he was being paid the promised 88% of freight revenue.

55. Plaintiff was not provided with complete itemized receipts or other evidence for deductions taken from his compensation, as required by 49 C.F.R. § 376.12(k).

56. Defendants took deductions far in excess of those that would have been authorized under any lawful lease agreement.

57. The pay statements Plaintiff did receive indicate that Defendants deducted approximately $14,000 in fuel expenses over approximately seven weeks of work—an amount that is facially excessive and fraudulent.

58. For context, at typical fuel prices and fuel economy rates for commercial trucks during the relevant period, $14,000 in fuel would have purchased enough fuel to travel significantly more miles than Plaintiff actually drove during this seven-week period.

59. Plaintiff was denied the opportunity to review and verify fuel expenses on the fuel card provided by Defendants.

    **D.    Prohibited Mandatory Vendor Requirements**

60. The Truth in Leasing Regulations, 49 C.F.R. § 376.12(j), prohibit authorized carriers from requiring owner-operators to purchase or rent products or services from the authorized carrier or from a vendor specified by the authorized carrier.

61. Despite this prohibition, Defendants required Plaintiff to purchase or use services from specific vendors as a condition of the lease arrangement, including but not limited to:

      a.    a. HERO ELD services provided through AITIM, INC. for electronic logging devices;

      b.    Repair services provided through or billed by SAM EXPRESS;

      c.    Fuel purchases through designated fuel card providers; and

      d.    Insurance policies procured through designated providers.

62.    Defendants deducted charges for these mandatory vendor services from Plaintiff's compensation without proper authorization or documentation.

63.    The mandatory vendor requirements violated 49 C.F.R. § 376.12(j) and were imposed for the purpose of generating additional unlawful profits for the KGZ OUTFIT and its affiliated vendors.

### E. Deductions for Services Not Provided as Promised

64.    Defendants deducted 12% of freight revenue from Plaintiff's compensation purportedly for "dispatch services."

65.    However, the dispatch services provided by Defendants were not legitimate dispatch services in compliance with federal regulations, but rather were part of the fraudulent chameleon carrier scheme.

66.    Because the dispatch services were not provided as promised and were in fact part of an illegal scheme, the 12% deductions for such services violated the Truth in Leasing Regulations.

67.    Defendants charged Plaintiff recurring fees for HERO ELD services.

68.    However, the ELD services were not legitimate ELD services in compliance with FMCSA regulations, but rather included illegal backdoor capabilities that allowed Defendants to falsify Plaintiff's Hours of Service records and Records of Duty Status.

69. Upon information and belief, Defendants used these backdoor capabilities to alter Plaintiff's electronic logs to conceal hours of service violations and to dispatch Plaintiff in excess of federally mandated limits.

70. Because the ELD services were not provided as promised and were in fact part of an illegal scheme to violate federal safety regulations, the deductions for such services violated the Truth in Leasing Regulations.

71. Defendants deducted at least $250 on a recurring basis from Plaintiff's compensation for insurance premiums.

72. However, the insurance policies for which these deductions were made were voidable and provided no actual coverage due to:

    a. a. Defendants' instruction that Plaintiff check in under different USDOT authorities than those under which he was insured;

    b. Material misrepresentations made to insurers regarding the nature and scope of operations;

    c. The chameleon carrier scheme that concealed the actual safety record and claims history; and

    d. The procurement of policies for the fraudulent purpose of passing roadside inspections while avoiding legitimate insurance costs.

73. Because the insurance was voidable and did not provide the coverage promised, the deductions for insurance premiums violated the Truth in Leasing Regulations.

74. These deductions also exposed Plaintiff to catastrophic personal liability in the event of an accident, as he was operating under the reasonable but mistaken belief that he had valid insurance coverage.

**F.     Failure to Return, Disclose Accounting and Pay Interest on Security Deposit**

75. Defendants required Plaintiff to pay a security deposit as a condition of the lease arrangement.

76. The Truth in Leasing Regulations, 49 C.F.R. § 376.12(k), require that the lease specify the amount and terms for any security or escrow fund, and that the authorized carrier pay interest on such funds.

77. At no time did Defendants pay Plaintiff any interest on his security deposit.

78. At no time did Defendants provide Plaintiff with proper accounting of his security deposit and did not return Plaintiff's security deposit.

## COUNT I

## VIOLATION OF TRUTH IN LEASING REGULATIONS

## 49 C.F.R. § 376.1 et seq.

79. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

80. The Truth in Leasing Regulations, 49 C.F.R. § 376.1 et seq., were promulgated pursuant to 49 U.S.C. § 14704(a)(2) to ensure that motor carrier lease arrangements provide fair compensation to equipment owners and protect them from unfair and deceptive leasing practices.

81. At all times relevant to this Complaint, Defendants operated as "authorized carriers" as defined in 49 C.F.R. § 376.2(a), holding USDOT operating authority to transport property in interstate commerce.

82. At all times relevant to this Complaint, Plaintiff was an "owner-operator" as defined in 49 C.F.R. § 376.2(f), being a person who owns commercial motor vehicle equipment and operates that equipment under lease to an authorized carrier.

83. The lease arrangement between Plaintiff and Defendants constituted an "equipment lease" subject to the Truth in Leasing Regulations under 49 C.F.R. § 376.2(c).

**A. Duties Owed Under Truth in Leasing Regulations**

84. As authorized carriers entering into equipment lease arrangements with owner-operators, Defendants owed the following duties to Plaintiff under the Truth in Leasing Regulations:

   a. Duty to Provide Written Lease (49 C.F.R. § 376.12(a)): The duty to provide a written lease containing all required terms, signed by both parties, and to provide the owner-operator with an original or copy of the lease.

   b. Duty to Include Required Lease Terms (49 C.F.R. § 376.12(b)-(l)): The duty to include in the written lease all terms required by the regulations, including but not limited to: i. The duration of the lease; ii. A statement that the owner-operator has exclusive possession and control of the equipment during the lease term; iii. The compensation to be paid to the owner-operator; iv. The method by which compensation will be computed and paid; v. Itemization of any deductions from compensation; vi. Specification of any charges the owner-operator must pay and services the owner-operator must purchase; vii. The party responsible for procuring insurance; viii. Terms and conditions of any escrow or security deposit fund, including interest to be paid; ix. Notice that a copy of the regulations is available for inspection; and x. All other terms required by 49 C.F.R. § 376.12.

   c. Duty to Provide Rate Confirmations (49 C.F.R. § 376.12(h)): The duty to provide the owner-operator with a copy of the rated freight bill, or any other form of freight documentation containing the same information, for each load transported.

   d. Duty to Provide Receipts for Deductions (49 C.F.R. § 376.12(k)): The duty to provide the owner-operator with itemized receipts or other appropriate evidence for each deduction made from the owner-operator's compensation, including advance payments, fuel, supplies, repairs, insurance premiums, and all other items.

   e. Duty to Pay Interest on Security Deposits (49 C.F.R. § 376.12(k)): The duty to pay interest on any escrow fund or security deposit at a rate not less than that required by applicable state law, and to specify the amount and payment terms in the lease.

   f. Prohibition Against Mandatory Vendors (49 C.F.R. § 376.12(j)): The duty not to require the owner-operator to purchase or rent any products, equipment, or services from the authorized carrier or from any person or entity designated by the authorized carrier, with limited exceptions not applicable here.

   g. Duty to Provide Escrow Protection (49 C.F.R. § 376.12(k)): If a security or escrow fund is required, the duty to establish an escrow account with a bank or other financial institution insured by an agency of the U.S. Government, or to obtain a surety bond.

   h. Duty to Pay Owner-Operator Within Specified Time (49 C.F.R. § 376.12(i)): The duty to pay the owner-operator within the time period specified in the lease, not to exceed 15 days after submission of the required delivery documents.

   i. Duty Not to Charge for Services Not Performed: The duty not to deduct charges for dispatch services, ELD services, insurance, or other services that were not performed as represented or that were performed in violation of federal law.

13

85. These duties are mandatory and apply to all equipment lease arrangements between authorized carriers and owner-operators.

86. Defendants owed each of these duties to Plaintiff.

**B. Defendants' Breach of Duties Under Truth in Leasing Regulations**

87. Defendants systematically and willfully breached each of the duties owed to Plaintiff under the Truth in Leasing Regulations as follows:

    a. a. Breach of Duty to Provide Written Lease: Defendants failed to provide Plaintiff with a written lease agreement containing the required terms. The lease arrangement was concluded online and over the phone with no written agreement provided to Plaintiff, in direct violation of 49 C.F.R. § 376.12(a).

    b. Breach of Duty to Include Required Lease Terms: Because no written lease was provided, Defendants necessarily failed to include any of the required lease terms mandated by 49 C.F.R. § 376.12(b)-(l), including terms regarding compensation, deductions, insurance, security deposits, and all other required provisions.

    c. Breach of Duty to Provide Rate Confirmations: Defendants failed to provide Plaintiff with rate confirmations or copies of rated freight bills showing the actual revenue received for loads Plaintiff transported, in violation of 49 C.F.R. § 376.12(h). This prevented Plaintiff from verifying that he was being paid the promised 88% of freight revenue.

    d. Breach of Duty to Provide Receipts for Deductions: Defendants systematically failed to provide Plaintiff with itemized receipts or other evidence for deductions taken from his compensation, in violation of 49 C.F.R. § 376.12(k), including deductions for: i. Approximately $14,000 in fuel expenses over approximately seven weeks; ii. Dispatch fees totaling 12% of freight revenue; iii. ELD service fees charged by or through HERO ELD/AITIM; iv. Insurance premium deductions of at least $250 recurring; v. Repair charges billed through SAM EXPRESS; and vi. Other undisclosed deductions.

    e. e. Breach of Duty to Pay Interest on Security Deposits: Defendants required Plaintiff to pay a security deposit but failed to pay any interest on the deposit, failed to specify the amount and terms in any lease agreement, and failed to establish proper escrow protection, in violation of 49 C.F.R. § 376.12(k).

    f. Breach of Prohibition Against Mandatory Vendors: Defendants required Plaintiff to purchase or use services from specific vendors as a condition of the lease arrangement, in violation of 49 C.F.R. § 376.12(j), including: i. HERO ELD services provided through AITIM, INC.; ii. Repair services provided through or billed by SAM EXPRESS; iii.

14

Fuel purchases through designated fuel card providers; and iv. Insurance policies procured through designated providers.

    g.    Breach of Duty Not to Charge for Services Not Performed: Defendants deducted charges for services that were not provided as promised or that were performed in violation of federal law, including: i. Dispatch Services: Defendants deducted 12% of freight revenue for dispatch services, but the dispatch services provided were not legitimate services in compliance with federal regulations. Instead, they were part of the fraudulent chameleon carrier scheme designed to circumvent customer blacklists, void insurance coverage, facilitate hours of service violations, and conceal the true nature of operations. Because the services were not provided as promised and were part of an illegal scheme, these deductions violated the Truth in Leasing Regulations. ii. ELD Services: Defendants charged Plaintiff recurring fees for HERO ELD services, but the ELD services provided included illegal backdoor capabilities that allowed Defendants to falsify Plaintiff's Hours of Service records and Records of Duty Status in violation of FMCSA regulations. Because the services were not provided as promised and were part of an illegal scheme to violate federal safety regulations, these deductions violated the Truth in Leasing Regulations. iii. Insurance: Defendants deducted at least $250 on a recurring basis for insurance premiums, but the insurance policies were voidable and provided no actual coverage due to Defendants' instruction that Plaintiff check in under different USDOT authorities, material misrepresentations to insurers, and the chameleon carrier scheme. Because the insurance was voidable and did not provide the coverage promised, these deductions violated the Truth in Leasing Regulations.

    h.    Breach of Duty to Pay Within Specified Time: Upon information and belief, Defendants failed to pay Plaintiff within 15 days of submission of delivery documents as required by 49 C.F.R. § 376.12(i), and in some instances failed to pay Plaintiff at all.

    i.    Excessive and Fraudulent Deductions: Defendants took numerous deductions that were excessive, fraudulent, and far in excess of any amounts that could have been authorized under a lawful lease agreement, including approximately $14,000 in fuel charges over seven weeks that were facially excessive and fraudulent.

88.    Each of these breaches was willful, knowing, and part of Defendants' systematic scheme to violate the Truth in Leasing Regulations and unjustly enrich themselves at Plaintiff's expense.

89.    Defendants' breaches were not isolated incidents or inadvertent errors, but rather constitute a deliberate and premeditated pattern and practice of violating federal law.

    **C.**    **Causation and Equitable Relief**

15

90. As a direct and proximate result of Defendants' systematic breaches of duties owed under the Truth in Leasing Regulations, Plaintiff has been deprived of compensation and other benefits to which he is entitled, and Defendants have been unjustly enriched.

91. Defendants have retained funds and other benefits that rightfully belong to Plaintiff and that they obtained through violations of federal law.

92. Plaintiff is entitled to equitable relief in the form of restitution, disgorgement, accounting, and declaratory relief as set forth below.

93. Plaintiff lacks sufficient information to calculate the precise amount of funds wrongfully retained by Defendants because Defendants have systematically concealed and withheld documentation required under the Truth in Leasing Regulations, including rate confirmations, itemized receipts, complete pay statements, and accounting of the security deposit.

94. The concealment of documentation is itself a violation of the Truth in Leasing Regulations and prevents Plaintiff from calculating his losses with precision.

95. An accounting by Defendants is necessary and appropriate to determine the full extent of funds wrongfully withheld from Plaintiff.

## VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor and against Defendants jointly and severally as follows:

    a. Declaring that Defendants violated the Truth in Leasing Regulations, 49 C.F.R. § 376.1 et seq., by breaching the duties owed to Plaintiff as set forth above;

    b. Ordering a complete accounting by Defendants of: All freight revenues received for loads transported by Plaintiff; All compensation paid to Plaintiff; All deductions taken from Plaintiff's compensation, including fuel charges, dispatch fees, ELD fees, insurance premiums, repair charges, and all other deductions; All detention fees and other accessorial charges earned by Plaintiff; The security deposit paid by Plaintiff and interest that should have accrued thereon; All other financial transactions between Plaintiff and Defendants;

      c.      Ordering disgorgement and restitution to Plaintiff of all amounts wrongfully withheld by Defendants, including but not limited to: All dispatch fees charged to Plaintiff (12% of freight revenue), as these fees were charged for services not provided as promised and in violation of federal law; All ELD service fees charged to Plaintiff by or through HERO ELD/AITIM, as these fees were charged for services not provided as promised and in violation of federal law; All insurance premium deductions taken from Plaintiff's compensation, as these deductions were for voidable insurance policies that provided no actual coverage; All excessive and fraudulent fuel charges, including restitution of the difference between actual fuel costs and the approximately $14,000 in fuel charges deducted from Plaintiff's compensation; All excessive and fraudulent repair charges deducted from Plaintiff's compensation for mandatory vendor services; The security deposit paid by Plaintiff together with interest that should have accrued thereon from the date of deposit to the date of return; All unpaid compensation owed to Plaintiff based on the difference between the promised 88% of freight revenue and amounts actually paid; All detention fees and other accessorial charges earned by Plaintiff but not paid;

      d.      Ordering Defendants to provide Plaintiff with all documentation required under the Truth in Leasing Regulations that has been withheld, including: i. A written lease agreement containing all required terms; ii. Rate confirmations for all loads transported by Plaintiff; iii. Itemized receipts for all deductions taken from Plaintiff's compensation; iv. Complete pay statements for all periods worked, including November 2023;

      e.      Awarding Plaintiff pre-judgment and post-judgment interest at the maximum rate allowed by law on all amounts ordered to be disgorged or restituted;

      f.      Awarding Plaintiff his reasonable attorneys' fees and costs incurred in prosecuting this action;

      g.      Piercing the corporate veil and holding individual Defendants TUTASHOV, MURZAPAZYLOV, and ZHALALDIN jointly and severally liable with the corporate Defendants for all equitable relief ordered herein;

      h.      Granting such other and further equitable relief as the Court deems just and proper.

**JURY DEMANDED**

Submitted by:
Counsel for Plaintiff
By: _/s/ Nicholas J. Kreitman_
Nicholas Kreitman
ARDC 6313283
Kreitman Law, LLC
505 North La Salle Dr., Suite 500
Chicago, IL 60654
(847) 970-0575
njk@kreitmanlaw.com